IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAN LEPORE & SONS COMPANY,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | No. 20-06230 |
| v. | : | |
| **TORCON, INC.** | : | |
| Defendants. | : | |

**McHUGH, J.**                                                                                           **March 24, 2021**

**MEMORANDUM**

This suit arises out of an alleged contract for masonry work on a hospital construction project in Paramus, New Jersey. Plaintiff, a masonry contractor, alleges that the Defendant general contractor wrongfully repudiated a valid contract between the parties. Defendant moves to dismiss for *forum non conveniens* based upon a forum selection clause designating Monmouth County, New Jersey as the proper forum. For the reasons set forth below, Defendant's motion to dismiss must be granted.

**I.      Facts and Procedural Posture**

In October 2019, Torcon Inc., a New Jersey corporation that serves as general contractor for the New Valley Hospital construction project, solicited pricing from Plaintiff, Dan Lepore and Sons Company, a Pennsylvania corporation, to work as a subcontractor on a masonry construction job. *See* Compl. ¶ 7, ECF No. 1. Defendant also inquired whether other subcontractors could use Plaintiff's scaffolding system and expressed interest in renting scaffolding after Plaintiff completed its installation. *Id.* ¶ 8. In January 2020, Plaintiff submitted a bid in the amount of $8,435,000, and Defendant sent Plaintiff a proposed Agreement, which included Riders "A"

1

through "G." *Id.* ¶¶ 9, 10. The agreement also included a forum selection clause within Article 15, providing:

> Except as provided in paragraph (b) below, any and all disputes arising out of and/or related to this Subcontract and the performance of the Work at the Project, shall be decided solely in the state court system, in the State of New Jersey, and venue in any such action must be placed in the County of Monmouth.[1]

Compl. Ex. 14, at 23, ECF No. 1-5.

Pursuant to the parties' discussions, Rider "A" addressed the use of Plaintiff's scaffolding by other Torcon subcontractors. *Id.* ¶ 11. Plaintiff sought to clarify and amend Rider "A" and sent Defendant a proposed Rider "H" to this effect on April 13, 2020. *Id.* ¶ 12. Three days later, Plaintiff executed the proposed Agreement, which included Rider "H" and the forum selection clause.[2] *Id.* ¶ 18. Torcon also executed the subcontract on May 14, 2020, allegedly acknowledging its agreement to Rider "H." *Id.* ¶ 25. Notably, the signatures of the parties appear on the same page as the forum provision. *See* Compl. Ex. 14, at 23.

The parties commenced performance under the subcontract in spring 2020. *See* Compl. ¶ 27. However, on October 26, 2020, Defendant is then alleged to have repudiated its contract with Plaintiff, stating that:

> This letter shall serve as notice that because Torcon, Inc. **does not accept/has never accepted the additional terms contained in the document entitled "Rider H – Clarifications and Amendments to Subcontract and Rider 'A' Subcontract No. 190185018 Scope of Work",** and despite Dan Lepore & Sons Co. having been given ample opportunity to withdraw its proposed Rider "H" but having declined to do so, **there has been no meeting of the minds between Torcon, Inc. and Dan Lepore & Sons Co. for The New Valley Hospital Project in Paramus, New Jersey**. Torcon, Inc. will thus be contracting with another entity to serve as its subcontractor for its Masonry and related work at The New Valley Hospital Project and Dan Lepore & Sons Co. should remove any of its workers, its equipment and its materials from the Project site immediately.

[1] Because the parties have not contended that paragraph (B) applies to the claim at issue, I do not reproduce it here.

[2] Plaintiff's Complaint does not describe any discussions pertaining to the forum selection clause. The sole negotiations between the parties appear to pertain to the scaffolding and Riders "A" and "H." *See* Compl. ¶¶ 14, 15, 16.

*Id.* ¶ 39 (emphasis added).

Plaintiff ceased all further work on the project in response, *id.* ¶ 40, and filed suit for breach of contract on December 10, 2020. It argues that Defendant's October 26th message constitutes a repudiation of a binding subcontract between the parties, causing Plaintiff to suffer damages. *Id.* ¶ 48. Defendant's motion to dismiss followed, contending that this case must be brought in Monmouth County, New Jersey. *See* Def.'s Mem. L. Supp. Mot. Dismiss 4, ECF No. 4-1.

## II.     Standard of Review

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.    Discussion

Defendant's motion invokes the doctrine of *forum non conveniens* for the proposition that the case must be brought in Monmouth County. When there is a forum selection clause potentially applicable to the dispute, the threshold issue is whether it is valid, because if it is, the clause will likely have controlling force in the analysis. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60, 63 (2013). Plaintiff first claims that the forum selection clause is invalid, under the theory that Defendant's repudiation of the subcontract resulted in there being "no contract provisions remain[ing] in force to bind either of the parties." *See, e.g.*, *County of Morris v. Fauver*, 707 A.2d 958, 966 (N.J. 1998). Torcon disagrees, arguing that the alleged repudiation of a contract does not render its forum selection clause inoperable, unless such repudiation is specially directed to the forum selection clause. *See* Def.'s Reply Supp. Mot. Dismiss 4, ECF No. 8. Plaintiff responds that the severability of the clause is irrelevant, because Defendant itself has argued that the contract, which, by definition, includes the forum selection clause, was not the product of an agreement between the parties. *See* Compl. ¶ 39 (stating that

"there was no meeting of the minds"). The application of *forum non conveniens* will turn, therefore, on whether the parties agreed to the forum selection clause, and whether Defendant's alleged repudiation of the contract impacts the validity of the clause.

   A. <u>Choice of Law</u>

As an initial matter, I must determine whether state or federal law governs my interpretation of the clause's validity. *See Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). The parties have invoked this Court's diversity jurisdiction, and "as a general rule in diversity cases, courts should apply state contract law to decide interpretation questions." *Id.* at 182. This case follows the rule, as it does not implicate traditionally federal interests and involves questions regarding contract formation and repudiation between two private parties. *Id.* State law will therefore apply to this action, and I look to Pennsylvania's choice-of-law rules to determine which state's law will govern. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

The two states with arguable interests in this action are New Jersey and Pennsylvania. To determine which law applies, I must first ascertain whether there is an "actual or real conflict between the potentially applicable laws." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). Here, Pennsylvania and New Jersey have adopted similar rules with respect to the formation of forum selection clauses and their legal effect once a contract is repudiated or rendered void. Because there is no conflict, I need not choose between Pennsylvania and New Jersey law. *See Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 879 (3d Cir. 2013) (stating that a district court, in resolving a *forum non conveniens* motion, is not required to predict which law a foreign forum would apply). I can instead look to both Pennsylvania and New Jersey precedent in the

analysis. I also note that federal law is consistent with both states and find federal decisions helpful in shedding light on the correct answer.

B. Severability of Forum Selection Clauses

I cannot accept Plaintiff's view that repudiation of a contract necessarily invalidates a forum selection clause. As a matter of both federal and state law, forum selection clauses constitute distinct contracts that are severable from a repudiated agreement. When confronted with an analogous situation in *Marra v. Papandreou*, the District of Columbia Circuit commented that the "repudiation shoe does not quite fit," and instead held that a forum selection clause should be "understood not merely as a contract provision, but as a distinct contract in and of itself." 216 F.3d 1119, 1125, 1123 (D.C. Cir. 2000); *see also Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 987 (2d Cir. 1942) ("Arbitration under the charter party here was a condition precedent").

This interpretation comports with the Supreme Court's view of arbitration clauses, which are treated as specialized forum selection clauses. *See Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 n.14 (1974) (stating that allegations of fraud do not render arbitration or forum-selection clauses unenforceable unless "the inclusion of that clause in the contract was the product of fraud or coercion"); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator"). Although the Supreme Court's decision in *Buckeye* addressed arbitration clauses, the Fifth Circuit applied its logic to forum selection clauses generally and held that "the party seeking to avoid enforcement must demonstrate that the [forum selection clause] is invalid rather than merely claim the contract is invalid." *Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 773-74 (5th Cir.

2016). *See also Autoridad de Energía Eléctrica de Puerto Rico v. Vitol S.A.*, 859 F.3d 140, 148 (1st Cir. 2017) (forum selection clauses may be enforced even if the overarching contracts are void). Federal courts within the Third Circuit have adopted a similar view. *See Adhesives Research, Inc. v. Newson*, No. 1:15-0326, 2015 WL 1638557, at *4 (M.D. Pa. Apr. 13, 2015) ("Under federal law, enforcement of a forum selection clause is unreasonable if the clause itself, not the contract as a whole, is the product of overreach").

Turning back to state law, Pennsylvania and New Jersey similarly provide that forum selection clauses are severable from a void or repudiated contract.[3] The Pennsylvania Supreme Court has held that, in the case of "general attack on a contract for fraud," a court should treat an "applicable arbitration provision as a severable part of the contract," unless the claim of fraud goes to the arbitration clause itself. *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 663 (1975) (citing instances where courts declined to invalidate an arbitration clause where the contract as a whole was voidable or void). New Jersey courts have also upheld the severability of these provisions. *See Van Syoc v. Walter*, 613 A.2d 490, 492 (N.J. Super. Ct. App. Div. 1992) (disagreeing with the concept that "if the contract was fraudulently induced, [the arbitration clause] should … fail"). The forum selection clause in this matter therefore remains in effect unless Defendant specifically repudiated it.

Consequently, this Court cannot address the proper forum by jumping to the merits. As one federal court has observed, Plaintiff's argument that a rescinded contract also terminates a forum selection clause puts "the proverbial cart before the horse," because the first question is where the merits should be addressed. *Wholesale Merchandise Processing, Inc. v. Orion*

---

[3] The Supreme Court in *Buckeye* applied its holding to state court decisions. 546 U.S. at 449. Regardless, the relevant case law in Pennsylvania and New Jersey predates the Supreme Court's 2006 decision and is in accord with it.

6

*Communications, Inc.*, No. 03:12-02003, 2013 WL 1361863, at *4 (D. Or. Mar. 4, 2013). I am further cognizant of the fact that reaching the ultimate question of whether Defendant repudiated the contract at the outset "would essentially give plaintiff the relief it seeks without requiring it to prove its case" in the proper forum court. *Starlight Co., Inc. v. Arlington Plastics Machinery, Inc.*, No. C011121SI, 2001 WL 677908, at *4 (N.D. Cal. Jun. 8, 2001).

    C.  <u>Validity of the Forum Selection Clause in this Case</u>

Plaintiff goes on to argue that even if the Court were to find that the forum selection clause is severable from the rest of the contract, the provision remains invalid for lack of agreement between the parties. *See* Pl.'s Sur-Reply Br. 8, ECF No. 9. In the alternative, it contends that Defendant's repudiation went specifically to the clause, rendering it unenforceable. *Id*.

New Jersey and Pennsylvania courts have made plain that forum selection clauses, though severable, must be the product of agreement between the parties. *See Atalese v. U.S. Legal Services Group, L.P.*, 219 N.J. 430, 442 (2014) ("[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law") (internal citations and references omitted); *Flightways Corp.*, 459 Pa. at 663 ("judicial inquiry is limited to the questions of whether an agreement to arbitrate was entered into and whether the dispute involved falls within the scope of the arbitration provision")*; see also Marra*, 216 F.3d at 1126 ("it could be argued—even if one accepts, as we do, the position that a forum-selection clause is severable from the contract containing it—that if the parties never entered into a contract in the first place, they by definition did not agree to the forum-selection clause, either").

Having determined that the forum selection clause is severable, I find that the parties agreed to the clause and that there is no basis in the record to conclude that Defendant repudiated it.

Plaintiff's Complaint asserting breach of contract and accompanying exhibits support the inference that the parties originally agreed to a subcontract containing the provision. *See* Compl. ¶¶ 18, 25; Ex. 14, at 23. Both parties' signatures appear on the page of the subcontract containing the forum selection clause, *see* Compl. Ex 14, at 23, and Plaintiff has offered no evidence to suggest that it took issue with the forum selection clause at the time that it signed the subcontract. And Plaintiff specifically alleges that the subcontract was fully executed around May 14, 2020, once Torcon initialed the contested Rider "H." *See* Compl. ¶ 25.

With respect to the alleged repudiation, Torcon's assertion that there "ha[d] been no meeting of the minds," when read in context, is linked to its further assertion that it "does not accept/has never accepted the additional terms" in Rider "H." *Id.* ¶ 39. This undermines Plaintiff's blanket claim that Defendant's October letter "repudiates both the subcontract at issue and, more specifically, any forum selection clause within the subcontract." Pl.'s Sur-Reply Br. 8. There is no indication that Torcon intended to repudiate the forum selection clause, given that Torcon specifically invoked the inclusion of Rider "H" as the reason for its repudiation, and the parties did not discuss the provision during negotiations. Compl. ¶ 39. When this evidence is viewed in the light most favorable to the Plaintiff, I cannot conclude, without more, that Defendant intended to also repudiate the forum selection clause. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (stating that pleadings at the motion to dismiss stage must "raise a reasonable expectation that discovery will reveal evidence of the necessary element") (internal citations omitted). The forum selection clause was validly entered into by the parties and remains in effect, despite the alleged repudiation of the contract.

D.  *Forum Non Conveniens* Analysis

Although the interpretation of a forum selection clause is a matter of state law, its enforceability is a matter of federal law. *See Collins On behalf of herself,* 874 F.3d at 181. Aside from arguing repudiation, Plaintiff has not otherwise contested the validity of the forum selection clause. For example, Plaintiff has not contended that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). I will therefore apply the principles of *forum non conveniens*, as affected by the presence of a valid forum selection clause. *See Atl. Marine Constr. Co.*, 571 U.S. at 63.

A district court's analysis of a *forum non conveniens* motion is ordinarily guided by four factors:

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum.

*Collins On behalf of herself*, 874 F.3d at 186.

The presence of a valid selection clause alters this analysis in several respects. As prescribed by the Supreme Court, a plaintiff's choice of forum in filing his or her lawsuit "merits no weight," and all arguments regarding the private interest factors "weigh entirely in favor of the preselected forum." *Atlantic Marine Const. Co. Inc.*, 571 U.S. at 64. In this case, that preselected forum is in Monmouth County, New Jersey. With respect to the remaining factors, Plaintiff has not claimed that Monmouth County would be an inadequate forum to hear its claims. Nor has Plaintiff identified any public interest factors that would indicate that New Jersey would be an inconvenient forum. Defendant's motion to dismiss, therefore, must be granted.

### IV. Conclusion

For the reasons set forth above, Defendant's motion to dismiss Plaintiff's Complaint will be granted. An appropriate order follows.

    /s/ Gerald Austin McHugh
United States District Judge